IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

APPEAL NO.: 24-40839

UNITED STATES OF AMERICA

V.

OLAMIDE OLATAYO BELLO

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN
DISTRICT OF TEXAS
U.S.D.C. NO.: 4-23CR136(1)

APPELLANT'S OPENING BRIEF

MR. OLAMIDE OLATAYO BELLO
#65100510
FANNIN COUNTY JAIL
2389 SILO DRIVE
BONHAM, TX 75418

PRO SE REPRESENTATION

U.S. COURT OF APPEALS
RECEIVED
JUL 21 2025
FIFTH CIRCUIT

NO.: 24-40839

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA
V.
OLAMIDE OLATAYO BELLO

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE

Mr. Olamide Olatayo Bello, a pro se appellant, presents and certifies for the record of this Honorable Court that the following listed persons and entities have an interest in the outcome of this appeal. This Certificate complies with the federal Rules of Appellant Procedure, Rule 26.1.

Mr. Olamide Olatayo Bello, the appellant
Hon. Judge Amos L. Mazzant III, United States District Judge
Hon. Judge Bill Davis, United States Magistrate Judge
Mr. Jeffrey Sean Taylor, Assistant United States Attorney

Respectfully Submitted on the 10 day of June, 2025

Mr. Olamide Olatayo Bello

NO ORAL ARGUMENT
REQUESTED

IV

# Contents                                                        Pages

APPELLANT'S OPENING BRIEF                                          i

CERTIFICATE OF INTERESTED PERSON AND

   CORPORATE DISCLOSURE                                           ii

STATEMENT REGARDING ORAL ARGUMENT                                 iii

TABLE OF AUTHORITIES                                              IV

STATEMENT OF JURISDICTION                                          1

STATEMENT OF THE ISSUES                                            2

STATEMENT OF THE CASE                                              4

STATEMENT OF THE FACTS                                             5

SUMMARY OF THE ARGUMENTS                                           6

ISSUE 1                                                            7

CONCLUSION                                                         88

CERTIFICATE OF SERVICE                                            89

CERTIFICATE OF COMPLIANCE

RECORD ON BRIEF                                                   90

APPENDIX                                                           #

BUSINESS RECORDS DECLARATION                                       1

PRESENTENCE INVESTIGATION REPORT                                   2

Authorities Pages

Arthur Anderson & Co., V. Finesilver,
  546 F. 2d                                                        7, 8
Barnard v. United States,
  342 F. 2d                                                         39
Barnes v. United States,
  124 U.S. App. D.C 318, 365 F. 2d 509, 510 (D.C. Cir. 1966)  19
Byrd v. Wainwright
  428 F. 2d 1017                                                    28
Flanagan v. United States,
  465 U.S                                                            7
Griggs v. Provident Consumer Discount Co.,
  459 U.S. 56, 58. 74 L. Ed. 2d 225, 103 S. Ct. 400 (1982)  9
Guevara v. United States,
  242 F. 2d 745                                                     29
Helstruki v. Meanori,
  492 U.S. 500 (1979)                                               71
In re Paxton,
  60 F. 4th 252
Johnson v. Hay,
  931 F. 2d 456, 459 (8th Cir. 1991)                              6, 9
Linddell v. Board of Educ.,
  73 F. 3d 819, 822 (8th Cir. 1996)                                 9

Authorities  Pages

Ruby v. Secretary of U.S. Navy,
365 f. 2d                                                    7,8

Stiggers v. State,
506 S.W 2d 609, 611 (Tex. Crim. App. 1974)      15

Strickland v. Washington,
446 U.S 668, 684-86 104 S. Ct. 2052, 2063-64
L. Ed 2d 674 (1984)                                87

States v. Peoni,
100 F.2d 401, 403 (2nd Cir. 1938)                 40

Ueckert v. Guerra,
38 f. 4th 446                                      8

United States v. Adkinson,
198 f. 3d 1147                                    38,40

United States v. Chandler,
388 F. 3d 796                                     35, 41

United States v. RMI Co.,
599 f. 2d                                         59

United States v. Cooper,
135 f. 3d 960                                      9

United States v. Ellis
709 f. 2d 688                                     38

United States v. Hernandez,
896 f. 2d 513, 519 (11th Cir. 1990)              40

Authorities Pages

United States v. Herrena,
~~29 F. Sup. 2d 756~~                    ~~65~~

United States v. Ingles,
  445 F. 3d 830                        46

United States v. Jorn,
  400 U.S 470, 479, 91 S. Ct. 547, 27
  ~~L. Ed. 2d 543 (1971)~~             ~~53~~

United States v. Nettles,
  570 F. 2d 547                        38

United States v. Parker,
  839 F. 2d 1473                       38, 40

United States v. Perez,
  489 F. 2d                            39

United States v. Robinson,
  361 U.S 220, 224, 4L. Ed. 2d 259
  ~~80 S. Ct 282 (1960)~~             ~~9~~

United States v. Silva,
  2018 U.S. Dist. LEXIS 191698        34, 56, 68

United States v. Steward,
  ~~729 F. 3d 517, 526 (6th Cir. 2013)~~    14

United States v. Wise,
  877 F. 3d 209, 215 (9th Cir. 2017)  12

VIII

Authorities Pages

United States v. Williams,
  30 F. 4th 263 .......................................... 12

United States v. Vaughn,
  493 F. 2d 441, 443 (5th Cir. 1974) ......... 19

United States v. Mitchell,
  484 F. 3d 762 ........................................ 77

United States v. Cotterman,
  709 F. 3d 952 ........................................ 14

Zhao v. IComposite, LLC,
  2022 Tex App. LEXIS 555 .................. 34, 56

Brady v. Maryland,
  373 U.S 83 (1963) ............................... 42, 62

Elisby v. Jones,
  960 F. 2d 925, 936 (11th Cir. 1992) ......... 87

United States Code

18 U.S.C. § 371

~~18 U.S.C. § 1349~~

18 U.S.C. § 1956(h)

18 U.S.C. § 2422(b)

18 U.S.C. § 3148(b)

18 U.S.C. § 3152-3156

~~18 U.S.C. § 3231~~

18 U.S.C. § 3731

21 U.S.C. § 853(n)(2)

28 U.S.C. § 1291

28 U.S.C. § 1651

28 U.S.C. § 2241

~~28 U.S.C. § 2243~~

~~28 U.S.C. § 2255(e)~~

47 U.S.C. § 230

Constitutional Provision

First Amendment
Fourth Amendment
Fifth Amendment

X10

Rules

Federal Rules Of Appellate Procedure Rule 10(b)(1)
Federal Rules Of Appellate Procedure Rule 4(b)
Federal Rules Of Appellate Procedure Rule 28(a)(8)(A)
Federal Rules Of Criminal Procedure Rule 5(f)(1)
Federal Rules Of Criminal Procedure Rule 6(e)
Federal Rules Of Criminal Procedure Rule 12(b)(3)(A)
Federal Rules Of Criminal Procedure Rule 11(b)(1)(G)
Federal Rules Of Criminal Procedure Rule 7(f)

XII

Texas Business Code

TEX. BUS. CODE Ann § 151.004
TEX. BUS. CODE Ann §3.1003

Others
  Websites
    http://sam.gov
    http://smoothmsp.com
  Business Code
    Cage Code 8DXY2
  Contracts
    ICE 70CDR21PI0000000IS
    DOD
        W9115005
        W911S120P0023

APP. NO.: 24-40839

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA

V.

OLAMIDE OLATAYO BELLO

APPELLANT'S OPENING BRIEF

Mr. Olamide Olatayo Bello respectfully files this Appellant's
Openning Brief, In Pro Se, seeking to vacate the convictions/
sentencing, remanded the case for the entry of Judgements of acquittal,
and for an immediate release from the custody

I.

STATEMENT OF JURISDICTION

Jurisdiction of this court is invoked under 28 U.S.C. §§ 1291,
2241, 2243, and 2255(e)

## STATEMENT OF THE ISSUES

1. Whether the district court wrongly proceed to trial assuming the notice of Appeal to be Ineffective? Mr. Olamide Olatayo Bello believes it did

2. Whether the district court wrongly proceed with the Criminal prosecution of Mr. Olamide Olatayo Bello with the prior knowledge that the Government was wrong bringing the Criminal Charges against Mr. Olamide Olatayo Bello? Mr Olamide Olatayo Bello believes it did

3. Whether the district court Judges Hon. Judge Amos L. Mazzant III, Hon. Judge Bill Davis, wrongly proceed with the criminal prosecution of Mr Olamide Olatayo Bello, sitting as the Judge In Several pre-trial hearings and in the Jury trial, with the prior knowledge that the Government was wrong bringing the criminal charges against Mr Olamide Olatayo Bello? Mr. Olamide Olatayo Bello believes it did.

4. Whether the district court and the Judges In the criminal prosecution of Mr Olamide Olatayo Bello know the truth but failed to admit the truth in the Criminal proceeding's? Mr Olamide Olatayo Bello believes It did

5. Whether the district Court and the Judges with the prior
   knowledge that the Criminal Prosecution of Mr. Olamide
   Olatayo Bello was wrong but obsessed with Conviction
   with no regard for Justice? Mr Olamide Olatayo Bello
   believes it did

6. Whether the district Court abetting the Selective and
   Vindictive Criminal Prosecution of Mr Olamide Olatayo Bello
   with the prior Knowledge of the Government Selectively and
   Vindictively Prosecute Mr Olamide Olatayo Bello? Mr Olamide
   Olatayo Bello believes it did

7. Whether the Government Selectively and Vindictively Prosecute
   Mr Olamide Olatayo Bello? Mr Olamide Olatayo Bello believes
   it did

8. Whether the district Court proceed wrongly with the Criminal
   Prosecution of Mr Olamide Olatayo Bello base on his race,
   nationality and Profession with no regard for Justice and the
   truth? Mr Olamide Olatayo Bello Belives it did

9. Whether the district Court persistently and without valid reason
   refuses to adjudicase the Criminal Prosecution of Mr.
   Olamide Olatayo Bello properly before it? Mr Olamide Olatayo
   Bello believes it did

4

## STATEMENT OF THE CASE

The Appellant filed several Interlocutory Appeals in this Court from the district Court's denial of his motions and all pleadings. ROA. 24-40839 (353, 356, 497, 649, 893, 1626, 2284, 2294)

The district Court proceed to trial assuming the notice of appeals to be ineffective. ROA. 24-40839. (2104, 2123, 2127)

The district Court improperly denied the order Designation record on Appeal and to be loan/furnished a copy of the record on Appeal. Crim. Ecf (Dkt. # 622), and after several requests by the Appellant

This brief follows

5

## STATEMENT OF THE FACTS ~~NANA~~

The Appellant was charged with Conspiracy to Commit Wire Fraud in violation of 18 U.S.c. §1349, and Conspiracy to Commit Money laundering in violation of 18 U.S.c. §1956(h) in the first Superseding Indictment after over 450-days of Continuous incarceration and less than 30-days before the trial. ROA·24-40839.1065

The Appellant filed several interlocutory Appeals. ROA·24-40839.. 353,356,497,649,893,1626,2284,2287,2294

The district court proceed to trial pendency of the interlocutory Appeals and Convicted the Appellant of the two Counts. ROA·24-40839..2104,2123,2127

## SUMMARY OF THE ARGUMENT

First, the Appellant argues that the district court wrongly proceed
to the trial assuming the notice of appeals to be ineffective by
relying on the final Judgement rule Prong of "Ueckert". The
Appellant argues that the timely notice of appeals on the district
court's rulings or order or denial of the motions, are appeals
from the district court's rulings that the district court Judges
intends to have nothing further to du- with, and that the
district court should have stay its hand until the appellate
court resolve the issue of Jurisdiction, or remand for further
Clarification of the Issues retroactively applicable in Johnson
V. Hey 931 f. 2d 456, 459 (8th Cir. 1991) and that the district
court may not reexamine or supplement the order(s) or
action(s) being appeal.

Second, the Appellant argues that the district court wrongly
proceed to trial and improper denial of order designation record
on appeal deprives him of his constitutional protected right to
"redress of grievances" and access-to-court.

Third, the appellant argues that the district court wrongly proceed
to trial in violation of constitutional protected rights and
due process

## ISSUE ONE

The district Court Proceed wrongly to trial assuming the notice of appeal to be Ineffective, based on the final judgement rule Prong of "Ueekert", where the test of finality is weather the district Court Intended that Its order be effective Immediately and base on the Collateral-order exception to final Judgement rule prong of "flanagan", where the court has found only three types of Pretrial orders In Criminal prosecution and each type Involves "as-asserted right the legal and Practical value of which would be destroyed if were not vindicated before trial"

## STANDARD OF REVIEW

The availability of Interlocutory appeal review and relief under the Saving Clause, 28 U.S.C §§ 2241, 1651, Presents matters of discretion which are reviewable for "abuse of discretion". Ruby v. Secretary of U.S Navy, 365 f. 2d; Arthur Anderson 8 Co., v. Finesilver, 546 f. 2d

## ARGUMENTS AND AUTHORITIES

Regarding the Final Judgement Rule, the test for finality is whether the district court intended that its order be effective immediately. Said another way, a court's ruling is only final if the judge intends to have nothing further to do with the motion (if an interlocutory appeal) or the case (if a conventional appeal). Ueckert v. Guerra, 38 F. 4th 446

Pursuant to Final Judgement Rule by this Court in Ueckert V. Guerra, 38 F. 4th 446, the Appellant filed several notice of Interlocutory appeal from the district court's denial of his motions and all pleadings related thereto. e.g ROA. 24-40839. (353, 356, 497, 649, 893, 1626, 2284, 2287, 2294), and the district Court proceed to trial, ROA. 24-40839. (2104, 2123, 2127, 2131) assuming the notice of Appeal to be ineffective.

The district court proceeded wrongly, assuming the notice of Appeal to be ineffective, warrant seeking the aid of the Court of Appeals by applying for a writ of Mandamus or Prohibitation under 28 U.S.c §1651. Ruby V. secretary of US Navy, 365 F. 2d at 389; Arthur Anderson & Co., V. finesilver, 546 F. 2d at 341

Once a notice of appeal is filed, the district court is divested of jurisdiction over matters on appeal. see Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 74 L. Ed. 2d 225, 103 S. Ct. 400 (1982); Liddell v. Board of Educ, 73 F. 3d 819, 822 (8th Cir. 1996). For example while an appeal is pending, the district court may not reexamine or supplement the order being appeal. See MOORE'S FEDERAL PRACTICE § 303.32 [2][a][ii] 18 n.15. This jurisdictional clause is primarily an issue for the Appellate Court; therefore, If an appeal is taken from an interlocutory order, and the issue of appealability is in doubt, the district court should stay its hand until the appellate court resolve the issue of jurisdiction, or remand for further clarification of that issue. see Johnson v. Hey 931 F. 2d 456, 459 n.2 (8th Cir. 1991).

Pursuant to Fed. R. App. P. 4(b), ... A notice of appeal filed after the announcement of a decision, sentence, or order - but before entry of the Judgement or order - is treated as filed on the date of and after the entry, and a timely notice of appeal is necessary to exercise of Appellate Jurisdiction. United States v. Robinson, 361 U.S 220, 224, 4L. Ed. 2d 259, 805. Ct. 282 (1960), United States v. Cooper, 135 F. 3d 960. The Appellant timely filed notice of Appeals invoked the Appellate Jurisdiction in this Criminal proceeding and divert district court's Jurisdiction.

Pursuant to Federal Rules of Appellate procedure, Rule 10(b)(1), the district Court improperly denied the Appellant's requests for an order designation record on Appeal and improperly denied the Appellant's Motion to be loaned/Furnished a copy of the record on Appeal pursuant to Federal Rules of Appellate Procedures Rule 28(a)(8)(A) ("Appellant's Contentions to the Authorities and parts of the record on which the Appellant relies") e.g. Crim. ECF (DKT #622), a generic response from the district Court denying every Appellant's request for either designation record on Appeal or to be loaned/furnished a copy of the record on Appeal. The Appellant was denied upon several motions and pleadings, the records of transcripts for both the pretrial hearing held on December 19, 2024 (12/19/2024) before the District Court Judge, Hon. Amos L. Mazzant III, and the transcript of the Jury trial held on January 13, 2025 (01/13/2025) to January 16, 2025 (01/16/2025), and the pretrial hearing held on January 8, 2025 (01/08/2025) before the District Court Judge, Hon. Amos L. Mazzant III, Properly transcribed for Appellate purpose as part of the Designation record on Appeal and a loan/furnished record, and deprived the Appellant ability to tie the record to his arguments, access-to-court, and his Constitutional protected right to properly "redress of grievances" as guarantee by the First Amendment to the Constitution of the United States of America.

The District Court Currently deprives the Appellant of his Constitutionally protected right to "redress of grievances." The Appellant, a Citizen of the United States of America, has an undeniable right to access the Court. The First Amendment to the United States Constitution holds in pertinent part that, "Congress shall make no law... abridging the Freedom ... to Petition the government for a redress of grievance." The district Court Knowingly and willingly deprives the Appellant review in his interlocutory Appeals by proceed to the trial disregard the notice of Appeals and the Jurisdiction, improperly depriving the Appellant's order designation record on Appeal and motion to be loaned/furnished a copy of the on Appeal, knowing without a proper designation record on Appeal and a loaned/furnished copy, It is impossible for the Appellant to properly pursue his appeal and tie the record to his arguments, an intentional act to improperly deny the Appellant access-to-court.

The district Court proceed wrongly to trial assuming the service of process is perfect on an inmate. ROA.24-40839. (689, 931, 1050) for example. The government failed to Properly serve the Appellant, denied his access-to-court to properly object the Motion and the district Court improperly conduct the required findings prior to granting the Motion that lead to the January 13, 2025 (01/13/2025) trial.

The district court proceed wrongly to trial with improper
sanction against an unlawful search and seizure and with
no regards to the sanction imposed against unlawful
search and seizure and pending appeal of pretrial
Fourth Amendment ruling.

"Despite our jurisdiction, it is awkward for an
appellate court to conside run-of-the-mill pretrial
evidentiary rullings that depend on the broader
evidentiary canvas of a case. This lack of
context is typically not a problem for the most
common uses of section 3731: appeals of pretrial
rullings suppressing evidence or statement, which
typically involve self-contained issues such as
whether reasonable suspicion supported a traffic
stop." see e.g. United States v. Wise, 877 f. 3d 209
215. (5th Cir. 2017) (appeal of pretrial Fourth Amendment
ruling). United States v. Williams, 30 f. 4th 263

During the Criminal proceeding, the Court affirm that the government violate the Appellant's fifth Amendment right as demonstrated on ROA·24-40839·1306 PageID 2470 (page 15) and the government never dispute that the seized cellular Phones, iPhone and Samsung, was owned by the Appellant's related businesses and corporations and used for their daily business operations as demonstrated during the Pre-trial hearing held before the Hon. Judge Bill Davis on December 13, 2024 (12/13/2024), ROA·24-40839·2369 PageID 3386-3388 (Page 53-55), that which is protected by the federal Rules of Criminal Procedure 6(e) because it contains privilege records, documents, and information about the third parties and its customers.

During the hearing held before the Hon. Judge Bill Davis on December 13, 2024 (12/13/2024), ROA·24-40839·2369, the government claimed the cell phones, iPhone and Sampung flip phones, were taken away from the search and warrant arrest location to the Controlled room at different location until the technology became available to access the Phones, as demonstrated on ROA·24-40839·2369 PageID 3425 (page 92) line 3, insinuating that, said another way, the iPhone and the Samsung, seized phones On June 21, 2023 (06/21/2023), from the Appellant, a director of the related businesses and corporations who was entrusted to protect the records and information on the asset that belongs

to his related businesses and Corporations at the time, at the co-located 47 U.S.C §230 data center located on 2105 Dublin Court Mckinney Texas, was siezed and brought to the remote location, from 2105 Dublin Court Mckinney Texas 75071, Called "the Controlled room" untill the technology became available to acces it and search it and without future search warrant.

The Appellant argue in his objection in ROA.24-40859.1721 Pursuant to United States v. Steward, 729 F.3d 517, 526 (6th Cir. 2013) and United States. v. Cotterman, 709 F.3d 952, that the government's warrantless search of the cell phones and all other digital devices, Conducted far away from the 47. US.C §230 Data Center located on 2105 Dublin Court. Mckinney Texas 75071 and days after the June 21, 2023 (06/21/2023) search and seizure warrant was executed, was unconstitutional and violate due process, because a "2105 Dublin Court Mckinney Texas 75071" Search of the phones is not transformed into an extended "Controlled room" search simply because the phones is transported and examined by beyond the "2105 Dublin Court Mckinney Texas 75071". The Appellant Motions was later, improperly denied, and only improperly grantee to supress the evidence Concerting two laptops and the Samsung flip Cell phone. ROA.24-40839.2061. The district Court improperly imposed saction on the unlawful search and Seizure of the iphone Cell phone.

The district Court imposed Sanction against an unlawful search and Seizure of the Samsung Cell phone as demonstrated on ROA.24-40839-2061, excluding of the evidence thereby obtained. Stiggers v. State, 506 S.W.2d 609, 611 (Tex. Crim. App. 1974), See also ROA.24-40839-1306 PageID2472 (Page 17)

The trial revealed that the government produced the evidence of the Samsung Cell phone during the closing argument with no regards to the Courts imposed Sanction against the unlawful search and Seizure by the Court.

The trial revealed that the government produced the priviledge records, documents, and information belonging to third party protected by Federal Rules of Criminal procedure 6(e) as a priviledge information between two third parties: Appellant's related businesses and Corporation; Co-defendant related businesses and Corporatons.

The trial revealed that the government produced the picture of the Samsung Cell phone and the third party privledge messages on the iphone.

The district Court proceeded to trial pendency appeals of pretrial rullings suppressing evidence and the government abridge the Court Order on imposed Sanction against an unlawful search and seizure

The district court wrongly proceed to trial, government inference in violation of the Appellant's right to have his guilt or innocence of the crime charged determined strictly on the basis of the evidence regarding the crime charged.

At the government closing argument, the government introduced the Samsung Cell Phone picture that was supressed, the picture of iphone. The Samsung phone was not in the exadmitted exhibit list. Both the iphone and Samsung Phone worth over One thousand five hundred ($1500). ROA-24-40839-2474 PageID 3558 where the phone is listed on the exhibit list

At the government closing argument, the government introduced two vehicles belonging to the Appellant as listed on ROA-24-40839-2474 PageID 3559 (Page 12)

The two vehicles that belong to the Appellant are
1. Mercedes Benz G550 2021 Model commonly know as G-Wagon
2. Mercedes Benz GT63 2021 Model

The government produced the pictures of the two vehicles and the worth of the vehicles without the finance record and the balance owned on each of the vehicle leaving the Jury to believe the Appellant owned the vehicles with no debt. Both vehicles worth over $450,000

The Appellant owns over $250,000 on the two vehicles with over $6,000 monthly payment and over $1500 monthly insurance payment.

The Appellant had a good credit with combined four(4) to eight(8) full time W2s/1099s jobs as a senior software developer for top telecom industries e.g Verizone, AT&T and senior software developer for other businesses and corporations e.g BaylorScott hospital, ETeam e.t.c, and a Manager at Elsevier a global software solution corporation out of Europe providing softwares and solutions globally for colleges and universities.

The Appellant gross in average of $40,000.00 monthly from W2s/1099s working from home.

The Appellant volunteer products and services for the related businesses and corporation and also as a financial backbone to support each of the businesses and corporations with average of over $10,000 monthly, In return the Appellant hope for future place to work after his retirement.

The Appellant documented and record all no interest loans loaned to each of the related businesses and corporations with the hope of future payment and bank records show proof.

The Appellant maximum monthly bill was $20,000. The Appellant residence was purchased in the year 2019 and all or over 98% of assets owned by the Appellant and his wife in the house was purchased prior to moving into the 2105 Dublin Court Mckinney 75071 on or about September of 2019. All records and receipts with bank statements available.

The Appellant earned enough income to support his life style and his family with his wife a full house wife and with two minors, a daughter now 7 years old and a son now 5 years old.

All the records of W2s/1099s incomes shows on the Appellant's bank statement and Tax returns.

The Appellant's wife never had Hemis Bag worth over $2000.00

The trial revealed that the government presented to the Jury that the Appellant's wife had over 20 Hemis bags and each worth over $20,000. That was a lie

The trial revealed that the government leave the Jury the impression that the Appellant's assets and his wife's assets were bought and paid off with the SBA PPP/EIDL Loans and the Appellant do not have any legitmate income

Producing the pictures of the cell phones, and the pictures of the two vehicles and its value in a fraud related case and without records and information of the appellant's income sources and payment status and balance on the vehicles, raises the issue of the character of the accused without his having placed his character in evidence. See Barnes v. United States, 124 U.S App. D.C. 318 365 F.2d 509, 510 (D.C. Cir. 1966).

It is a foundamental jurisprudence principle that evidence of an accused's prior criminal record is inadmissible when the accused chooses not to testify and does not place his character in issue. [ United States v. Yaughn, 493 F.2d 441, 443 (5th Cir. 1974)

The photographs which were admitted into evidence here without express showing the ownerment of the cell phones, financed status of the two vehicles and the Appellant's numbers of concurrent jobs and gross monthly income, are generally indicative of past criminal conduct.

An inference of the defendant's bad behaviour in the past may then be created in the minds of jurors by introducing a "Nigerian" defendant with extensive experience in computer science and technology, supposedly with no legitemed legal

20

Income Source, but driving over four hundred and fifty thousand Dollars ($450,000.00) two luxurious Vehicles and with two high end expesive Cell phones, where an ~~average americans, expecrally in the Eastern District of~~ Texas where the jurors were Poor, hardly own or drive twenty thousand Dollars worth of vehicles and own One (1) Cell Phone worth less than four hundred Dollars ($400.00)

~~Such an inference is violative of an accused right to have~~ his guilt or innocence of the crime charged determined strictly on the basis of the evidence with incomplete records and information regarding the crime charged.

A basic tenet of the criminal law is that a person must not be convicted based on the jury's assumption that the person is ~~bad because he committed some unrelated crime in the past.~~

~~The district court did not balance the government need for the~~ evidence against the accused's Constitutional protections for a fair trial.

~~The Only way that the photographs and the information can be~~ admitted is If the trial judge determines that the Probative value outweights the prejudice to the defendant, here, the government may have introduce that the two cell phones

belongs to the Appellant's related businesses and corporations and the two vehicles were financed and introduce the monthy car note payment and the finance balance on the two vehicles and then introduce the Appellant's personal bank account statements and W2s/1099s to wit monthly legal gross income and the nature of the Appellant's job to wit: the companies he worked for, rather the government created prejudice wrong impression in the mind of the juror about the Appellant's assets without enough or no income to support his life style, leaving the juror to only believe that the Appellant committed a crime.

leaving one to believe that the juror can only imagine that the Appellant can only acquire his assets as a Nigerian through fraud as alleged

The district Court Wrongly Proceed to trial with disregard to the Subject-Matter Jurisdiction.

The district Court Violated the Appellant's Sixth Amendment right to be informed of the nature and Caused of the accusation.

Here, the records reflects a Continued debate concerning the Court's Subject-Matter Jurisdiction, a question still unanswered to this day, so also questions regarding Pretrial services, Petition for revocation Filing. (originate)

The Appellant Continually demanded explanation Concerning a "Control and Manage" person in his Official duty and in Compliance with the Texas state Business Rules, or particularization Of Conduct which was alleged to be in Violation of 18 U.S.C §§ 1349, 1956(h) as demonstrated in ROA 24-40839 .. 536, 539, 585, 592, 597, 620, 642, 697, 722, 732, 744, 788, 809, 823, 834, 1023, 1115, 1134, 1214, 1223, 1283, 1699.

In answer at Report and Recommendation of the United States Magistrate Judge, ROA 24-40839. 1088 PageID 2131-2132 (Page 2-3), the Court Stated that its Jurisdiction was based Solely on the Indictment and the Appellant's appearance in Court; said another way the Court's Jurisdiction Was based Solely on the government's request, the Indictment,

for the Appellant to be "kidnap", and the sucess of the Appellant's "Kidnapping" and the Court also claim in It's reasons that the Civil laws and the Texas States laws and rules didn't matter, forgetting that a federal law and the laws of the United States similarly protected by the civil laws and no federal law violation when a defendant Comply with the federal Civil and State laws and rules, and the district Courts only have Jurisdiction over all offenses against the law of the United States. 18 U.S.C § 3231. Thou only the government may criminally prosecute, but any offense that can not be Justify by Civil Law, such may not be Criminally Justify and the thin line between criminal prosecution and civil prosecution is who can prosecute, expecially here, where the defendant abide and in compliance with both the federal and state laws that governs the "Control and Maneage" Person of a Corporation as alleged, ROA-24-40839-1065 PageID 2104 (Page 1), that which is the only nexus with the alleged Crime, lumping the Appellant together with all of his related businesses and corporations that are documented by the states as a legal entity as if both are one, for the sake Sole Purpose of the alleged Crime.

The Court further answer in ROA-24-40839-1088 PageID 2132 (Page 3); that the prosecution alleges that the Appellant either applied for the Fraudulent loans himself or accepted Fraudulent loan money from Co-defendants to pay his Mortgage, Send money

to Nigeria, Purchase or Pay off several vehicles, and install solar Panels on his home, that which is completely different from the Language of the Indictment and the P.S.R, and the trial revealed bank records of the third party, the related Appellant's businesses and corporations as a documented legal entity, applied and funded SBA PPP/EIDL loan, Pay Its rent, send money internationally in the course of Its business needs, Pay of solar panel debt and purchased or pay off several commercial trucks for Its business needs and received Payments in exchange for services from Its business or corporate customers and not from any of the codefendants all which are material facts and evidence, in compliance with the sole purpose of the SBA EIDL loan program. The trial also revealed that the Appellant's related businesses and corporations that were founded PPP/EIDL loans had employees and utilized the founded PPP loan as prescribed by the SBA PPP loan program because two of the government witnesses were two of over 50 employees of the Appellant's related businesses and corporations during the alleged period of the crime and neither of the two witnesses testified that they worked and never received salary or that their co-worker complained of non Payments during the alleged period; so also the attached business Record Declaration.

The district Court Wrongly proceed to trial by denial of the Appellant's Emergency Motion for Severance ROA.24-40839-1017

The Court's denial of the Appellant's severance prejudice ~~the~~ Appellant because he was ~~he was~~ the "key-man" in the Hub-and-Spoke. Conspiracy with the intent to have codefendants testify on the exculpatory evidence, and the co-defendant's guilty plea in the joint trial prejudice the Appellant.

The Appellant presented a Motion for Sever based on his desire to offer substantial exculpatory testimony of Co-defendant and that such testimony will not be available if the trial Join with the Co-defendants.

Appellant also clarity that there is a bonafide need for the testimony, and there has been no suggestion that the substance of the testimony could be obtained by other Meas with the substance of the desire testimony set forth in the affidavit

On or about November 23, 2021, the United States Department of Interior (DOI), office of Inspector General (OIG), conducted proactive analysis of available loan data for the Federal paycheck Protection Program Program (PPP), and a Co-defendant Mr. Olabode Thomas Ajibola was Interview by federal Agent(s) e.g Special Agent Laura K. Flagg

Mr. Olabode Thomas Ajibola presented substantial exculpatory testimony about the Appellant; the Appellant's related businesses and corporations, and about the PPP loans funded his related business and corporation to WIT: payments made to the Appellant's related businesses and corporation, was in exchange for services during his interview. A copy of the interview is available at the United States Department of the Interior office of Inspector General through Special Agent Laura K. Flagg.

The Appellant's Cousel at at time Mark Lawrence Watson provided a copy of the interview to the Appellant and the Fannin County Jail where the Appellant is detain denied Appellant's access to the copy.

The Appellant's related businesses and corporations is a 47 U.S.C 8230, and provided a platform as a services for businesses and corporations to find lenders during the COVID-19 Pandemic SBA PPP loan program.

The Appellant's related businesses and corporations is a 47 USC 8230 and provided post Covid-19 Accounting and Payroll support and services for businesses and corporations to also includ payroll and accounting software solutions.

37

Appellant's related businesses and Corporations is a 47 USC §230 and Co-Located 47 U.S.C §230 data Center at the Appellant's residence in a rented space.

All of the alleged Co-defendants and Co-conspirators are connected to their related businesses and Corporations that was funded PPP EIDL loan

All of the alleged Co-defendants and Co-conspirators related businesses and Corporations are each a Customer to the Appellant's related 47 USC §230 businesses and Corporations.

The Appellant is the Center of the Conspiracy with knowledge of the two third parties: Appellant's related businesses and Corporations, Co-defendants/Co-conspirators related businesses and Corporations, and the two third parties connected by 47 US.C §230 mandates, and the Appellant's related Businesses and Corporation related businesses that are the Common Variance between all the Co-defendants/Co-Conspirators businesses and Corporations

Appellant is a director at the related businesses and Corporations making him the Center of the Hub-and-spoke Conspiracy that Can present the substantial exculpatory testimony

as The (is the) director of the related businesses and corporations, and a defendant that desire to use the potential exculpatory testimony of co-defendant.

Eight co-defendants pled guilty before trial and five of the co-defendants that pled guilty before the trial was a witness for the government during the trial to testify against the Appellant ONLY, thou all the five pled co-defendant Co-defendants at the trial witness and testify that each have no prior knowledge of the crime prior to the FBI arrest, but the guilty plea by the eight co-defendants before trial prejudice the defendant Mr Olamide Olateyo Bello, the Appellant by cross-defendant prejudice and by surprise as it relates to trial preparation.

The Appellant was entitled to grant of motion for severance because he needed to use codefendants' exculpatory testimony. Codefendants were more likely to testify at a seperate trial, and Codefendants' pleas of guilty at trial would prejudiced him as a defendant, retroactively applicable in Byrd v. Wainwright, 428 f. 2d 1017

The district court wrongly proceed to the trial, the trial circumstantial evidence had not excluded every reasonable hypothesis of innocence by Jury, Similarly situated in Guevara V. U.S.A, 242 F. 2d 745. See the jury trial transcript at the district court's clerk office properly transcribed for the appellate purpose. e.g the trial revealed that the alleged IP address 12.11.136.106 provided by AT&T as demonstrated on ROA-24-40839.759 PageID 1795, and leased to Ajide Technology Corporation was deployed in compliance to the 47 U.S.C §230 status by Ajide Technology Corporation to legally deliver Interactive Computer services and information content provider services as prescribed by 47 U.S.C §230.

The IP address 12.11.136.106 was part of several IP addresses called IP address block associated with Ajide Technology Corporation and its 47 U.S.C §230 data center co-located at the same location and address of the Appellant's address. Said another way, Ajide Technology Corporation as a person, shared the same residence address with the Appellant, and Ajide Technology Corporation leased the IP address 12.11.136.106, which was one of several IP addresses leased from AT&T, packed or used at the shared address. Similar to a co-tenant, hypothetically Ajide Technology, owns several vehicles, parked at its residence address that was shared with the Appellant because both the Appellant and Ajide Technology live in the same building and pay bills.

The trial revealed that the appellant's residence is a data center, affirmed by the Appellant's court's appointed and paid independent private investigator, and a jury trial witness Whitney Harding, and it was undisputable by the lead investigator and a federal agent Jason D. Rennie. Said another way, the trial affirmed both the Appellant and Ajide Technology was living in the same building, the building was owned by the Appellant and Ajide Technology Corporation was a tenant. Ajide Technology Corporation's equipments that was kept in its rented space was used by a third party during its visit to the building to commit the alleged crime in the Ajide Technology Corporation rented space and without the knowledge of both the Appellant and Ajide Technology Corporation because the equipments was built to solve problems and there was no other way Ajide Technology Corporation and Appellant can know the intention or motive behind the third party while using the equipments other than a good possitive reasons to solve problems. Similarly situated in the gun manufacturer who had no control over what the gun buyer use the gun for but the gun was produced [manufactured] for good reasons and not for evil. Another scenario, Elon Musk, the owner of twitter do not own twitter as a platform to sell drug and can not be indicted in a drug conspiracy with any twitter user cought selling drug on twitter to wit: the buyers of the drugs, so also Craigslist.com owner

The trial revealed business relationship between two third party persons: Appellant related businesses and corporation and Co-defendants related businesses and Corporations.

The trial revealed Payment transactions, ~~in exchange for services.~~ between two third party persons: Appellant related businesses and Corporations, and Co-defendants related businesses and Corporations.

The trial revealed the Co-defendants and the Appellant are "truly not the third party persons"

The trial revealed that the only nexus between the defendants are third party persons: Appellant related businesses and Corporations, and Co-defendants related businesses and Corporations

The trial revealed that the only nexus between the defendants and the SBA PPP/EIDL loan programs are the third party persons: Appellant related businesses and Corporations, and Co-defendants related businesses and Corporations

The trial revealed that the defendants had no prior knowledge of the crime prior to the arrest, hypothetically, had no prior knowledge that pursuant of TEX. BUS. CODE Ann. §§ 151.004, 3.1003 and 47 U.S.C 8230 as a provider/user was a crime.

The trial revealed that the Appellant is related to the following businesses and Corporations base on the Mandate prescribed in the Statutory status of TEX. BUS. ORG Ann. §§151.004, 3.1003: Ajide Technology Corporation; DOBit; Yembell; Obello Inc.; Obello Solutions Corporation; and Smooth Multi-Services Platform

The trial revealed that the Appellant in his official Capacity Pursuant to TEX. BUS. ORG. Ann. §§151.004, 3.1003 was a Sole Signer to the Corporate and business bank accounts of the following businesses and Corporations that are not "truely the Appellant": Ajide Technology Corporation; DOBit; Yembell; Obello Inc.; Obello Solutions Corporation; and Smooth Multi-Services Platform

The trial revealed that neither the Appellant relationship with the related businesses and Corporations, nor the related businesses and Corportion TO WIT: Related businesses were fraudulently Funded the SBA PPP/EIDL loan and misused the PPP/EIDL founded loans; had Committed a Crime, because nothing on record shows that the Appellant's related businesses and Corporations were charged with a Crime of Conspiracy to Commit Wire Fraud in Violation of 18 U.S.C. §1349 and a Crime of Conspiracy to Commit Money laundering in Violation of 18 U.S.C 1956(h). No primary Violation by indispesdab indispensible persons.

The Criminal proceeding revealed that the Appellant related businesses and Corporation shared the user policy of the 47 U.S.C §230 product and services with the Users of the ~~PPP/EIDL interactive Computer Services as demonstrated on~~ ROA·24-40839·1721 PageID 2952 (Page 13), and that the Appellant's related businesses and Corporations shared the eligible SBA PPP/EIDL expenses with the users of the PPP/EIDL Interactive Computer services as demonstrated on ROA·24-4083~~1721 PageID 2953 (page 14)~~

The P.S·R reveals business relationship between two third Party Persons, Monetary transactions between two third Party Persons, and relationship between two third Party Persons: Appellant's related businesses and Corporations, and Co-defendant's related businesses and Corporations

The P.S·R reveals the Common relationship between two ~~third Party Persons and the SBA : SBA PPP/EIDL loans~~ founded to the Appellant's related businesses and Corporations, and the Co-defendant's related businesses and Corporations

Both the trial and P.S·R revealed no Violation of the law by the two third Party persons: Appellant's related businesses and Corporations, and Co-defendant's businesses and Corporations affiliated legal entity

The above facts combination leaving one to ONLY believe that the trial circumstantial evidences had not excluded every reasonable hypothesis of innocence by the jury because the only nexus between the Appellant and the alleged crime was the third party persons who was not and never alleged of any violation of the law and there is no where on the record that the nexus between the Appellant and the third party person violated the law, and the trial revealed that the States, e.g Texas, Colorado, California, Missouri, Florida, has been documented to constitute a legal entity to include the two third party persons: Appellant's related businesses and corporations, and the Co-defendant's related businesses and corporations, It can not be said that the two third party persons are "truly the defendants" for the purpose of conspiracy to commit wire fraud in violation of 18 U.S.C § 1349; and can not be said that the two third party persons are "truly the defendants" for the purpose of conspiracy to commit money laundary in violation of 18 U.S.C § 1956(h) and for the purpose of the P.S.R Pursuant to "SILVA" court's mandate in United States v. Silva, 2018 U.S. Dist LEXIS 191698. The record shows that the Appellant is/was not an alter ego of a corporate entity because the Appellant is/was not, and record evidence did not rise to the level of proof necessary to show that the Appellant was/is an alter ego of the corporate entity retroactuely applicable in Zhao v. iComposite, LLC 2022 Tex App. LEXIS 555

The district court wrongly proceed to the trial, the government did not prove single wire fraud and money laundering conspiracy as alleged. Defendants did not knowingly agree to participate ~~in overall scheme to defraud the SBA of PPP EIDL loan as~~ alleged, similarly situated in the United States v. Chandler, 388 f-3d 796; See the jury trial transcript at the district court's clerk office properly transcribed for the appellate purpose ROA-24-40839 ∴ 1283, 2230

In United States v. Chandler, 388 f. 3d 796, Defendants appealed from judgement of the United States District Court of Florida, which convicted them of conspiracy to commit mail fraud, in violation of 18 U.S.C §371 and denied their motion for judgements of acquittal. After the court issued its initial opinion, the government filed a limited petition for rehearing. The court granted rehearing, reversed the denials of the motions for judgement of acquittal, vacated the convictions and remanded the case for entry of ~~judgements of acquittal for each of the defendants.~~

Chandler's court case is similarly situated here, an employee for a marketing company that managed fast food restaurant's promotional games, embezzled game stamps and recruited others to redeem the stamps. Here, the appellant was alleged of either applied for fraudulent SBA PPP/EIDL loans himself or accepted fraudulent loan money from co-defendants to pay his mortgage,

Send money to Nigeria, purchase or pay off several vehicle, and install solar panels on his home, ROA.24-40839.1088 PageID 2132 Last paragraph, ROA.24-40839.2304 at 11-19, from the findings of the district court's Magistrate Judge Hon. Bill Davis, and also alleged that the Appellant recruited others to apply for fradulent SBA PPP/EIDL loan, ROA.24-40839.1065 PageID 2110 (Paragraph 21)

The Chandler's Court further argue that the indictment charged that defendants conspired to represent themselves fraudulently as legitimate winners when they indicated that they obtained their game stamps through authorized, legitimate channels. Here, the manner and means of the conspiracy, ROA.24-40839.1065 PageID 2111-2112 (Paragraph 23) indicated that the defendants conspired to represent themselves fraudulently as a legitimate businesses that qualify for the SBA PPP/EIDL loans.

Chandler's Court also argue that the court found that the rules did not unequivocally prohibit defendants from representing themselves as "legitimate" winner when they acquire their game stamps by transfer from someone else. Here, the SBA PPP/EIDL loan process does not prohibit defendants from representing themselves as "legitimate" applicant/borrower when they acquire the loan by application or submission from someone else, affirmed by the SBA representative and the government witness Agent Angelo M. Pontillo, Jr during the trial

In Chandler's Court, Defendant's Conduct was thus not plainly and unmistakably proscribed by §371. Because the Indictment charged a single Conspiracy in which the embezzler was the Key Man who stole the Stamps and then Constructed a Vast network of Co-Conspirators who would both redeem the game stamps and recruit others to do so, the government had to prove that defendants knew of the essential nature of the plan and agree to do it. Here, the defendant's Fraudulent SBA PPP/EIDL loan was allegedly acquired/Applied/submitted by Someone else, the Appellant, who allegedly applied Fraudulently from an IP address 12.11.136.106, and the Appellant was the alleged "Key Man" who Fraudulently applied for the SBA PPP/EIDL loans and then Constructed a Vast network of Co-Conspirators, the government had to prove that the defendants knew of the essential nature of the plan and agreed to do it.

The trial revealed that the government Failed to prove a single hub-and-spoke Conspiracy as there was no Connection between the Spokes and the Spokes had no knowledge of the overall Scheme to defraud the SBA of PPP/EIDL loans and knowingly agree to participate as alleged, retroactively applicable in Chandler's Court

Similar to Chandler's Court, here, the evidences shows no such independence of the spokes. The combined efforts of the spokes were not required to insure the success of the venture. No spoke depended upon, was aided by, or had any interest in the success of the other. Each spoke acted independently and was an end unto itself. The actions of one spoke did not facilitate the endeavors of other co-conspirators or the venture as a whole. See Ellis, 709 F. 2d at 690 (no evidence permitting inference that spokes knew of each other or interacted in any way); Nettles, 570 F. 2d at 551 (same).

Similar to Chandler's Court, Here, there was no any evidence of an overlap of membership between the spokes. The only member common to each seperate spoke as revealed by the trial evidences and witnesses, was the Appellant. Adkinson, 158 F. 3d at 1153 ("The government must prove an agreement between at least two conspirators to pursue jointly an atte illegal objective"); Parker, 839 F. 2d at 1478 ("The law is well settled that existence of a co-conspirator is not only an element of the crime, but the very essence of the crime"). The trial revealed Nnaemeka Emmanuel Ogueji ("M. Ogueji") as a conconspirator recruited Defendant Justice Nzube Ogueji ("J. Ogueji"); co-conspirator Kehinde Sunday Ifiola ("Ifiola") was recruited by unindicted person, and all co-defendants were related to the Appellant through the Appellant's related businesses and corporations. Customers said

another way, the Appellant and the Co-defendants are Connected through two third Party persons: Appellant's related businesses and Corporations; Co-defendants related businesses and Corporations. The trial revealed that the defendants Kehinde Sunday itiola ("Itiola"), Olabode Thomas Ajibola, never met the Appellant prior to the trial. The trial revealed that the defendant's related businesses and Corporations was founded the alleged SBA PPP/EIDL loans.

Similar to Chandler's Court, although each of this spoke Conspiracies had the same alleged goal to Fraudulently obtained the SBA PPP/EIDL loan(s); there was no evidence that this was a Common goal. Although each spoke directed Its efforts toward the goal of obtaining the alleged SBA PPP/EIDL loan(s), there was no evidence, indeed the government Conceded, that no spokes was aware that It was participating in anything Larger that Its own SBA PPP/EIDL alleged loan(s). See Barnard, 342 F.2d at 133 (reversing Convictions for single Conspiracy where no evidence showed that the individual Planning of five Seperate accidents Contemplated more than that particular one). There was certainly no evidence that they agreed to do So. Each spoke represented a Seperate scheme, joined by no overall objective to be achieved by multiple actions. See Parez, 489 F.2d at 62

At trial, similar to the Chandler's Court, five of the Co-Conspirators who had already pled guilty to the alleged Conspiracy were asked if they "Knew" they were "doing something wrong" and had subsequently plead guilty to the Charged Conspiracy. Five of these Co-defendants, ROA-24-40839-2135, testified that they plead guilty despite the fact they did not know that the SBA PPPLEIDL was fraudulently founded as alleged, prior to the FBI arrest.

Since no one Can be said to have agree to a Conspiracy that they did not know exist, proof of knowledge of the overall scheme is Critical to a finding of Conspiratorial Intent similarly situated in Chandler's Court as a Comparism. "Nobody is liable in Conspiracy except for the fair import of the Concerted purpose or agreement as he understants it". United states v. Peoni, 100 F. 2d 401, 403 (2nd Cir. 1938). The government, therefore, failed to prove beyond a reasonable doubt that the Conspiracy existed, that the defendant knew about It, and that he voluntarily agree to join It. United states v. Hernandez, 896 F. 2d 513, 519 (11th Cir. 1990), and the government failed to show beyond a reasonable doubt that there was a "Meeting of the Minds to Commit an Unlawful act." Adkinson, 158 F. 3d at 1134 (quoting Parker, 839 F. 2d at 1478)

LFI

The district Court wrongly proceed to the trial, the presented evidences Could not Sustain Conviction and are in sufficient, the defendants were unaware of the scheme and had know Knowledge of the scheme prior to the FBI arrest similarly situated in the United States v. Ingles, 445 F 3d 830; United States v. Chandler, 388 F. 3d. 796; See the Jury trial transcript at the district Court's Clerk Office properly transcribed for the Appellate Purpose

The district Court Wrongly proceed to trial assuming the disclosure obligation of prosecutor Under Brady v. Maryland 373 U.S 83(1963) and Its Progency Pursuant to Rule 5(F)(1) to be effectue. Appellant was improperly denied access to the Brady Materials over the Cause of this Criminal Proceeding. ROA-24-40839.683, ROA-24-40839.797, ROA-24-40839.886, and ROA-24-40839.1120 are examples of where the Appellant demonstrated the express and improper denial of the Brady Materials over the Cause of the Criminal Proceeding in the Criminal Case 4:23CR136(1)

43

The district court Proceed wrongly to the trial selectively and vindictively in violation of Fed. R. Crim. P. 12(b)(3)(A) as demonstrated in ROA.24-40839..1547,1567,1590

The Appellant was indicted and prosecuted base on the ground of his election or appointment as an individual in his official capacity to assume the responsibility of "Control and Manage" businesses and corporations as one of the Directors in accordance to TEX. BUS. ORG. Ann. §151.004, to perform that duties in the management of the entity as prescribed in TEX. BUS. ORG. CODE. Ann. §3.1003, that which others similarly situated in the State of Texas are not criminally prosecuted e.g CEO's/Directors of Amur Equipment finance, verizone, AT&T, facebook Twitter, similarly providing 47 U.S.C §230 services as the Appellant's related businesses and corporations are not criminally prosecuted for any abuse of the products or services by the users/customers.

The district Court Wrongly proceed to trial assuming the Appellant was guilty of the Crime Charged.

The Appellant Is an Interactive Computer Services and Information Content provider with over twenty (20) years experience in delivering legally, Computer and information Content Services and products in Compliance to the 47 U·S·C· §230.

The Appellant's related businesses and Corporations are Interactive Computer Services and Information Content Providers with over Ten (10) years in business delivering legally, Computer and Information Content Services and products in Compliance to the 47 U·S·C· §230 to the public, businesses, and the United States government agencies

Smooth Multi-Services platform, the Parent Corporation and Company to all of the Appellant's related businesses and Corporations with the head office in Nigeria See http://www.smoothmsp.com

Smooth Multi-Services Platform is a global Corporation similarly Situated in the United States of America as a C-Corporation to WIT all of Its subsidiaries, collectively delivering different Categories of Interactive Computer services and Information Content Services as prescribed by 47 U·S·C §230 as demonstrated in ROA·24-40839·97 PageID·632 (page 17), as a Platform, well

45

Structured to add More Corporation to the Platform as the demand arise or grow for any unique product and services. For example, if the demand for Android Phone Support and products grows to the extend that there is enough customers and revenue from such demand, the Platform will add another legal entity or Corporation(s) to focus only on the Android Phone Support and products unlike the traditional businesses that add new or another department to provide a unique support and services. This structure will allows sub-divisions of each Corporations in the ~~futhore~~ Future focusing on a unique Products and Services. Each legal entity on the Platform independenly pay their own Tax and legally seperated for easy future Micro Management by the Parent Company Similarly situate in the Agile environment in the Product and Software development life cycle.


Smooth Multi-Services Platform and subsidiaries as of December Of 2022 Collectively had over 200 employees globally and over 5 directors. Over 50 employees and over 2 directors were situated in the United States with Ajide Technology Corporation, a subsidiary Company, as a Sole Service Provider Of Accounting and Payroll Services to all United States based subsidiaries of Smooth Multi-Services Platform, businesses and Corporations.

46

Each of the Smooth Multi-Services Platform Subsidiary Independently support its own products and services and depends on other Subsidiaries for products and services other than its own.

Each of the Smooth Multi-Services Platform Subsidiary channel the demand for product and Services not available on the Platform i.e Services and product not delivering by any of the businesses and Corporation on the platform, through the parent Company and then the parent Company channel the demand for such products and services to the outside business and Companies. This process help Smooth Multi-Services platform to Justify the needs for future growth and the needs to add another Corporation into the platform.

Smooth Multi-Services platform is a licenced local Telephone Operator in Nigeria, Member Of FCC in the USA and a provider Of phone and internet Services in the USA.

Smooth Multi-Services platform and its Subsidiaries is a member Of SAM.GOV with Cage Code 8DXY2 and has delivered several products and Services to the United States government Agencies. For example ICE Contract Number 70CDR21P100000015, US Department Of Defence (DOD) Contract Number W9115005, W9115120P0023 e.t.c

47

Each Of the Smooth Multi-Services platform Subsidiaries to wit Smooth Multi-Services platform relied on Ajide Technology Corporation 47 U.S.C §230 data Center Co-located in the Appellant's residence In Mckinney Texas 75071 to deliver products and Services to over 15,000 Users and Subscribers globally, ROA·24-40839 PageID 1039 (Page 69), demonstrate few of the Section §230 products and Services e.g VPN, web hosting, Cloud Storage and Services, eMail Services and Products, Sip Phone Services, IPTV services and Products, Media Streaming Services and Products, Remote Desktop Services and products, International Phone Call termination Services and Products e.t.c.

AT&T was the fiber Internet Service provider that delivered 47 U.S.C §230 Commerial and data Center grade of fiber Internet Connection to Ajide Technology Corporation at the Co-located 47 U.S.C §230 data Center on 2105 Dublin Court Mckinney Texas 75071 with a block of dedicated IP-address blocks Sub-leased and assigned to a Direct Internet Acces (DIA), or a Managed Internet Service (MIS) or serial IP, Controlled and managed by a legal entity Ajide Technology Corporation to provide 47 U.S.C §230 product and Services to Its Users and Customers, and as a point Of Contact to access the premises, the Appellant was listed. 2105 Dublin Court Mckinney Texas 75071 Is also the Appellant's primary residence. ROA·24-40839·759 PageID 1795, where the Appellant demonstrate the 47 U.S.C §230 Setup at his residence.

The IP address 12.11.136.106 was one of the several IP addresses Atide Technology Corporation assigned or attached to its 47 U.S.C §230 Products and Services and was used during the SBA PPP/EIDL loan program to source for lenders with the Atide Technology Corporation's "Crawler" inhouse built Application that uses Ansible to batch and submit an applicant loan Application to several lenders with a click of a button. For example, the "Crawler" will take one Application for the PPP/EIDL loan Submitted or provided by the web user, or WhatsApi mobile Application user or user that call in, and send that single Application to over 20 PPP loan lenders for consideration using the API provided by the lender or batch the Application automatically on the lender web platform, saving the user the need to singly submit the same Application independently and singly to each lender. For example, using Credit Karma, user can apply to several credit card companies with a single login, another example, user can search for airline ticket from several airlines with a single click on google flight platform.

Trial Witness on January 13, 2025 (01/13/25) through January 16, 2025 (01/16/2025) jury trial, Whitney Harding presented undisputably facts of 47 U.S.C §230 data Center Co-location at the Appellant's residence and was affirmed by the lead Investigator FBI agent Jason D Rennie. See the jury trial transcript on Criminal Case 4:23CR136(1) located at the district court's clerk office, transcribed for appellate purposes.

Each Of the Smooth Multi-Services Platform Subsidiaries to wit Smooth Multi-Services channel all Software/Applications and Computer/laptop purchases, licencing, installation and distribution from external source, i.e Businesses not on the platform, through Smooth Multi-Services platform, ROA·24·40839·97 PageID 632 (Page 15) and all internal Communications with the external customers and Corporate non government users/customers are Controlled and managed by the parent Company and channel through the API into WhatsApp Mobile and Web application, ROA·24·40839 PageID 631 (page 14).

The Appellant in his Official Capacity and as a Microsoft Certified Professional with extensive experience in software development, voluntarily handles the software mass distribution on the Smooth Multi-Services platform with installation scripts designed and built for Smooth Multi-Services Platform and its subsidiaries. For example, all Microsoft Office products, such as Microsoft Word, are installed on the Computers/Laptops using the installation scripts with steps Similarly Situated in ROA·24·40839·97 PageID 633 (page 16). This Installation steps/script leave over 200 laptops on the Smooth Multi-Services platform with Microsoft Word documents with the Author "David Bello" irrespective of the Computer User(s) at the time.

The madness behind these explanations and overview of the Smooth Multi-Services Platform and Its subsidiaries is to demonstrate a required knowledge and understanding to present before the district court any summary and financial overview of the Smooth Multi-Services Platform and Its subsidiaries.

Neither Agent Jason D. Rennie nor Pamela G. Williams are in any better possition to present any summary and general overview of Smooth Multi-Services platform and Its Subsidiaries especially with no prior knowledge of the company's structure, products, formation, and Services, and neither can a bank account records from the bank justify the true records, documents, and information about the Smooth Multi-Services platform and Its Subsidiaries.

Agent Jason D. Rennie wrongly assumed that the Appellant was guilty of the crime charged and wrongly assumed or asserted the following during the pretrial release revocation hearing held before Hon. Kimberly C. Priest Johnson, United States Magistrate Judge, ROA·24-40839·2326

a. Agent Jason D. Rennie overview of his Investigative was Conclusive that the Appellant committe a crime because of his ethic and Nationality as a Nigerian as demonstrated on ROA·24-40839·2326 PageID.1276 (Page 4) line 19-21.

b. Agent Jason D Rennie was Conclusive that the Appellant Committed a Crime because of his ethic and nationality to wit his extensive Professionalism in Computer Science and technology and asserted that the Appellant was guilty of gross professional misconduct in falsifying and altering companies payroll and revenues, as demonstrated on ROA·24-40839·2326 PageID 1288 (page 16) line 14-18

c. Agent Jason D. Rennie was Conclusive that the Appellant ~~Committed~~ Committed a Crime because of his ethic and nationality To wit Ownership of property and bank accounts in Nigeria and substantia connections to both North Texas area and the Country of Nigeria. ROA·24-40839·2326 PageID 1278 (Page 6) line 20-22

d. Agent Jason D Rennie was Conclusive that the Appellant Committed a Crime because of his ethic and nationality To wit running ~~Multiple businesses through his home which are based in~~ Nigeria and because of his prior business relationships providing Tax services. ROA·24-40839·2326 PageID 1227 line 12-16

e. Agent Jason D Rennie was Conclusive that the Appellant Committed a Crime and asserted that Nigerians with Family Connections, and bank accounts, and property in Nigeria, with connection in the Northern part of Texas, and with extensive ~~prof~~ Proffessionalism in Computer science and Technology are Category of people that are Criminals. Agent Jason D. Rennie Committed a hate Crime in Violation of 18 U.S.C §249. ROA·24-40839·210 PageID 825-826 (Page 8-9)

f. Agent Jason D. Rennie was Conclusive that the Appellant
Committed a Crime because he was allegedly provide a copy
of a driver's licence, with prior knowledge that the Appellant
provided Tax Services, Ignoring the hypothesis of Identity
Verification. ROA-24-40839.2326 PageID 1227 (page 5) line 17-20

g. Agent Jason D. Rennie was Conclusive that the Appellant
Committed a Crime because of his ethic and nationality and
Was reminding his Co-defendants of their Fifth amendment
righ to Self-Incrimination and their Constitutional right.
ROA-24-40839.2326 PageID 1280 (Page 8) line 11-25, ROA-24-
40839.2326 PageID 1281 (page 9) line 1-8

h. Agent Jason D. Rennie was Conclusive and asserted that
the Appellant Committed a Crime of Pretrial release and
Violated no-Contact order because of his Connection in Nigeria,
Proffessionalism, Personal prior Contacts, prior business Contacts,
and Contacts made by third Party from Nigeria and without
the Control of the Appellant, to a Co-defendant in the USA over
the WhatsApp, Knowing that the alleged Criminal Charged was
Posted Online and fast spread globally and over the Opinion
of a third Party the. Appelland have no Control off.
ROA-24-40839.2326 PageID 1281-2741 (page 9-63)

The district Court proceed Wrongly to the trial in Violation
of the Speedy trial Act (STA), 18 U.S.C. §3161 as demonstrated
on ROA.24-40839.. 2076, 2107; 2194, the Appellant was
Charged in the First superseding indictment and tried by
the Jury in less than 30-days apart.

The district Court proceed wrongly to the trial on the First
Superseding Indictment Pendency the Original Indictment, that
which sufficiently Jeoperdize the Appellant for the purpose
a double Jeorp Jeopardy Clause when Appellant is put to trial
before the trier of facts. United States v. Jorn, 400 U.S 470, 479,
91 S. Ct. 547, 27, L. Ed. 2d 543 (1971), as demonstrated on
ROA.24-40839. The Appellant was tried on two separate indictmen
as one, and the Original Indictment is currently pending because
there is no record on file that the government move for
dismissal of the Original against the Appellant

The district Court proceed Wrongly to trial with Commulative
Violation of the Appellant's protected Constitutional rights as
demonstrated on ROA.24-40839.823, and Cummulative
Procedural/Prosecutorial Misconduct, defects and due Process
Violation as demonstrated on ROA.24-40839..908, 1289. The
Appellant was improperly denied right to properly and
timely represent himself, right to discovery, access-to-court,
right to the Court Interpreter, etc

The district court wrongly proceed to trial by denial of the Appellant's motion to continue the trial, ROA-24-40839-2096. In order for him to prepare his defense to the First Superseding Indictment, which added Count 2 to the case less than 30-days before trial.

The Court's denial of the Appellant's continuance motion prejudice ~~him~~ Appellant because he was required to prepare a defense for one Count of Conspiracy to commit money laundary in violation of 18 U·S·C §1956(h) which requires the burden of proof of the montary transactions of third parties that involve engagement of third parties custodians, Accountents various bank statements records of the related businesses and corporations, receipts e·t·c that could ~~take~~ months to ~~recover, discover or access expecially computer records that are over 2 years~~. The Appellant was a pro se inmate with limited or no access to resources ~~to~~ required to prepare a defence in less than 30-days.

The appellant's denial of motions, ROA-24-40839·· 1120, 1265, 1639, 1645, 1651, 1657, 1663, 1669, 1675, 1681, 1687, 1699, 1945, 2003, 2012, prejudice the appellant, a pro se defendant, with no access to resources to make out his defense was improperly denied by the denial of these motions, the records required for his defense and proof of innoceny

The district Court wrongly proceed to trial assuming the
Appellant is the "truly related businesses and Corporations."
See the Jury trial transcript at the district Court properly
transcribed for appellate Purpose in the Clerk's office, and
the P.S.R

During the alleged Period, the state of Texas has been documented to constitute a legal entity to include Ayrde Technology Corporation, see Texas sos record. The state of Colorado has been documented to constitute a legal entity to include Yembell, Obello solutions, Fastlinks, Obellu inc, DOBit, and African Diaspora Television. see Colorado sos record. The state of florida, California, Missouri, and Colorado, has been documented to constitute a legal entity to include smooth Multi-services Platform.

In the United states V. Silva, 2018 U.S. Dist. Lexis 191698, It is arguable that because the states has been documented to Constitute a legal entity in florida, It cannot be said that It is "truly the Defendant" for Purpose of 21 U.S.C § 853 (n)(2). similarly here, because the states has been documented to Constitute the Appellant's related businesses and Corporations, It cannot be said that It is "truly the Appellant" for the purpose of 18 U.S.C §1349, 18 U.S.C §1956(h), p.s.r, and sentencing. The Prosecution failed to Meet the burden to establish that the Appellant was an alter ego of a Corporate entity for Jurisdictional Purpose since record evidence did not rise to the level of Proof necessary to show that the Appellant was an alter ego of Corporate entity arguable in Zhao V. iComposite, LLC 2022 Tex. App. Lexis 555.

The Presentence Investigation Report (P.S.R) In this Criminal Case was prepared on or about March 6, 2025 (03/06/2025). The P.S.R In paragraph 13 revealed businesses and Corporations related to the Appellant that submitted or applied for PPPLEIDL loans to the SBA and are all businesses that Meet the SBA PPPLEIDL loan requirements, because nothing on record or in the Criminal Proceeding alleging any Violation by the businesses and Corporations. The P.S.R In Paragraph 15 revealed businesses and Corporations that paid Appellant's related businesses and Corporations In exchange for Services, again this transactions are Constitutional and nothing on record or in this Criminal Proceeding alleging the businesses and Corporations of any Violation. The trial further revealed, so as Paragraph 17 of the P.S.R, that the government witness, Federal Agent Pamela G. Williams perjury herself, presented Fraudulent financial summary and expenses of the Appellant's related businesses and Corporations and without prior knowledge of the formation, nature, structure, type, Locations, assets, products, booking and records, receipts, Purchase orders, expenses, number of employees, e.t.c a must knowledge require to present and and deliver the financial records, status, expenses, and summary of any business and Corporation. The trial also revealed two of the ex-employees of the Appellant's

related businesses and Corporations during the alleged period and that the Appellant's related businesses and corporations did not violate any law. To further support Federal Agent Pamela G. Williams Perjury, she claimed that the Appellant's related businesses and corporations business expenses out of DOBit business account was $100 which is less than daily business expense on equipment Maintenance and server support.

The trial and the P.S.R revealed that violation of the Federal Rules of Criminal procedure 6(e), that the government had admitted to discovery disclosing the records, documents and information belonging to the third party, the Appellant's related businesses and Corporations, and information, that adversely affecting the Appellant's related businesses and Corporations, creating tortios business interference and economic disadvantages between the Appellant, Corporate business customers, united states government agency customers, public customers, and the Appellant's related businesses and Corporations, who at the edge of closing the door for good after over 10-years in business as a result of the adverse ripple effects of the government disclosure of the records, documents, and information, that which the government is not authorized, particularly as it conveyed false information, the Appellant did not then and never has had such relationship with any of the related businesses and

and Corporations to WIT: Its Customers. United States v.
RMI Co, 599 F. 2d at 1186.

The district court proceed wrongly to the trial with the Federal agent and the lead investigator Jason D. Rennie, who had knowingly and willingly perjury himself before the district Judge and without the court's initiation of criminal Contempt proceeding against him knowing he had perjury himself without a reasonable doubt, and after the court's own findings.

The Federal Agent and the lead investigator in this criminal proceeding, FBI Agent Jason D. Rennie, perjury himself during the evidentiary hearing before the district court Magistrate Judge, Hon. Bill Davis on December 13, 2024 (12/13/2024) as demonstrated in ROA.24-40839.2369.

The Appellant presented a question while Agent Jason D. Rennie was on stand under the oath during the evidentiary hearing before the district court Magistrate Judge Hon. Bill Davis on December 13, 2024 (12/13/2024) and during the cross-examination, concerning his invocation of his right to the counsel during his arrest on or about June 21, 2023 (06/21/2023).

Question: "After I invoked my right?" ROA.24-40839.2369 PageID 3404 (Page 71) line 18

Answer: "Well, I'll disagree that you invoked your right. I'll say that I voluntarily stopped asking questions. You ~~dln't~~ didn't invoke you right." ROA.24-40839. 2361 PageID 3404 (Page 71) line 19-21

Question: "was a recording? Okay. If you play the recording I did not invoke my right to the counsel?" ROA.24-40839. 2361 PageID 3405 (Page 72) line 3-5

Answer: "Yes". ROA.24-40839.2369 PageID 3405 (Page 72) line 6 Affirmative, beyond a reasonable doubt, the lead investigator Jason D. Rennie prejudice the Appellant as demonstrated on ROA.24-40839.. (265, 2017), intentionally and willingly perjury himself with no regard of the law, court, and the siting judge during the hearing, findings by the Hon. Judge Bill Davis from the recorded audio tape during the interview while the Appellant was interviewed on June 21, 2023 (06/21/2023) during his arrest at his residence revealed that the lead Agent Jason D. Rennie was testimony was false under the oath as demonstrated on ROA.24-40839.1306 as follow:

"The Government provided an audio recording, Beller invoked his fifth Amendment right to Counsel" ROA.24-40839. 1306 PageID 2471 (Page 16) line 3-4.

The Magistrate Judge did not have to waste the time and judicial resources to find the material facts and the truth had the lead Agent Jason D. Rennie had not perjury himself inside the court that interfere with the judicial process that which the court have the ability to initiate Contempt prosecutions and federal Agent Jason D. Rennie would not have testify at trial because of the perjury, and the government would not have obtained guilty verdict against Appellant

Thou, the Supression hearings do not determine a defendent guilt or punishment, Yet Brady rest on the idea that due process is violated when the withhulding evidence is "Material either guilt or punishment" Agent Jason D. Rennie act of withhulding the recorded material truth concerning the Appellant's guaranteed Fifth Amendment righ to the Counsel, was a brady Violation. ROA-24-40839-2017

The Appellant further emphasized several other Perjuries by the lead Agent Jason D. Rennie during this Crimal Proceeding as demonstrated in his objection to the Magistrate Judge Hon. Bill Davis. Report and Recommendation, ROA-24-40839-1088, in his motion to dismiss indictment, ROA-24-40839-539, and in ROA-24-40839-1379 PageID 2545-2603 where he argues that in Franks v. Deleware, 438 U.S. 154, the false statements and omissions by Agent Jason D. Rennie in this Criminal proceeding, in the affidavit of Search warrant that contains numerous material omissions and false statements, such as omitting intentionally and willingly the 47 U.S.C §230 Data Center features of the "SUBJECT PREMISER", falsify the true ownership of the black 2020 Dodge RAM 1500 when the DMV records shows the true owner, falsify the operational status of the Appellant's related businesses and Corporations, omitted the material records and information Concerning the IP address ownership and purposes, omitted the material records and

Information about the Businesses and Corporations co-located at the "SUBJECT PREMISES", Omitted the material records and Information of the Appellant's source of income e.g 1099's/W2s, Omitted the material records and Informations about the Appellant's Vehicles. credit financed with over $5,000 monthly payment, Falsify the material records and information on the SBA PPP/EIDL founded Person, Provided Misleading Information on SBA PPP/EIDL utilization of funds by the Appellant's related Businesses and Corporations and Wrong impressions Concerning the Appellant and his relationship with the related businesses and Corporations etc for example, the trial revealed that the Solar Panels at the Appellant's residence that was installed on the Appellant's roof was owned by DOBit, an information different from the false records and information in the affidavit of search warrant and the indictment, and that the alledge IP address belong to Ajide Technology Corporation.

The district court wrongly proceed to the trial depending on the government's witness and a Co-Conspirator who had fraudulently presented false altered information to aid fraudulently in the evidences used by the government to revoke the Appellant's pretrial release and perjury himself during the Jury trial on the Criminal Case number 4:23CR136(1). Finding that the actual WhatsApp Messages was different from the WhatsApp Messages the government claimed that the Co-defendant Saburu Olawale Yusuff produced as the messages he recewed from a WhatsApp user from Nigeria and that Saburu Olawale Yusuff had a prior Knowledge and Contact with the WhatsApp user Prior to the Indictment. For example the actual Message in ROA-24-40839.893 PageID 1925 (Page 14) reads "assure", in the word "I asure you ..." and the altered fraudulent messages presented during the hearing in ROA-24-40839.893 PageID 1924 (Page 13) reads "assure", in the word/statement "I assure you...", the actual screen shut shows that the WhatsApp messages was altered in ROA-24-40839.893 PageID 1924 (Page 13); Saburu Olawale Yusuff repeatedly stated that he Conspired with the Appellant while on the witness stand under the oath but responded "NO" when asked if he knew what he was doing was wrong before the arrest, perjury himself with his earlier statements made that he "Conspired" with the Appellant. Forensic Review also shows that Saburu Olawale Yusuff was in the same WhatsApp chat group prior to the Indictment with the Nigeria Contact alleged.

The Counsel on file at the time, Mr. Frank Jackson, was improperly notify of the revocation hearing held on August 22, 2023 (08/22/2023) before the Magistrate Judge Hon. Kimberly C. Priest. ROA.24-40839.2359 PageID 1300 (page 28) line 21-22 where the Counsel express that he was not prepared to try the case, a case of the Appellant's Pretrial release revocation that was wrongly instituted by the Pretrial Services Petition for the revocation when the Statutory language of Pretrial Service Act specifically specify that only the attorney for the government can file or initiate such petition arguable in Herrena's Court. ROA.24-40839.620, United States V. Herrena, 29 f. supp. 2d 756. Had the Attorney for the government initiated the petition, Certificate of Service would have ensure perfect of service process part, which explained the madness in the Congress Intention to expand the list of Person to initiate a release revocation proceeding under ~~18 U.S.C. §3148(b) to exclude Pretrial Services Officer under the~~ Pretrial Services Act, 18 U.S.C. §3152-3156. Here the act of the Pretrial Services presents a subject Matter question of law and Inconsistency with the due process that which the district court Swept under the Carpet with disregard for the rules, mandate, and the Appellant's Constitutional right.

It is important to notice that in United States District Court for the Eastern District of Texas, Pretrial Services initiate the Petition for Pretrial release revocation disregarding the Mandate of the ~~Pretrial Services Act. Records available in the Clerk's office of the district court~~

The district Court wrongly proceed to trial assuming the Fourteenth Amendment is not applicable to the Appellant who is a citizen of the United States.

The District Court Currently deprives the Appellant in his official Capacity of his Constitutionally protected right to access-to-Court.

The Fourteenth Amendment to the United States Constitution holds in pertinent part that, "No state shall make or enforce any law which shall abridge the privileges or immunities of Citizens of the United states. Nor shall any state deprive any Person of life, liberty, or property, without due process of law; Nor deny to any Person within its Jurisdiction the equal Protection of the law."

The district Court statute results in a difference in access to instruments needed to vindicate legal rights as a director and sole signer to business and Corporation bank account, this difference, based upon a defendant's official Capacity status, is Contrary to the Equal Protection Clause of the fourteenth Amendment

The district Court wrongly proceed to trial assuming no violation of due process.

The Appellant was deprived of his constitutionally protected right that is particularized by the Fifth Amendment to the United States Constitution TO WIT: "No person shall be... deprived of life, liberty, or property, without due process of law."

The Supreme Court defined due process as long ago as 1884 as, "Any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of the law."

In the Appellant's Criminal Case, the court deviated and/or violated the Mandate of the Federal Rules of Criminal Procedure, To wit: The Court Violated Rule 11(b)(1)(G) by failing and/or refusing to advise the Appellant of "the nature of each charge to which the defendant is pleading." Should the defendant considering and accepting a guilty or nulo contendere plea because the Indictment assume the Appellant is "truely the related businesses and Corporations" for the purpose of the alleged crime, finding that when the States has been documented to constitute a legal entity in Texas, Florida, Colorado, Missouri, California, It cannot be said that It is "truly the Appellant" for the purpose of 18 U.S.C §1349, 18 U.S.C §1956(h), P.S.R, and Sentencing retroactvely applicable in United States v. Silva, 2018 U.S. Dist. LEXIS 191698. Here, It is impossible to establish the nature of each charge to which the Appellant is pleading when the only nexus to the alleged crime is the appellant's status as a "Control and Manage" person and status as the sole signer to the "Control and Manage" person's business bank account, and without a primary violation of the "Controlled and managed" person, the Appellant's related businesses and Corporations.

On or about October 21, 2024, the Appellant shows his concern and desire to be made aware of the essential elements of the charge as they related to fact as well, by filing an Emergency Motion for Evidentiary hearing, ROA.24-40839.585, In Prose; On or about December 5, 2024, the Appellant shows his concern and desire to be made aware of the essential elements of the charge as they related to fact as well, by Filing Motion for Bill of Particulars in pursuant to Fed. R. Crim. P. 7(f), ROA.24-40839.960. The Appellant further filed several Motions for Bill of Particulars, ROA.24-40839.1023, 1699. The Motions were all later denied.

The district Court Knowingly and willingly deprives the Appellant's Protected right in his official Capacity, and the applicable 47 U.S.C §230, TEX. BUS. ORG. CODE. Ann. §151.004, and TEX. BUS. ORG. CODE. Ann. §3.1003 immunity of a citizen of the United States, by refusing to Comply with the statutory mandate of 47 U.S.C §230, TEX. BUS. ORG. CODE. Ann. §151.004, and TEX. BUS. ORG. CODE. Ann. §3.1003, and returning all Appellant's Motions in his official Capacity Concerning the Criminal Prosecution Case Number 4:23-CR-136-1 e.g Crim. ECF (Dkt. #622) is a generic Order enclose in the returned mails to the Appellant in his Official Capacity Concerning the Criminal Case Number 4:23CR136(1) by the district Court denying his access-to-Court.

The district Court wrongly proceed to the trial against the right guaranteed by the Constitution and due procees

In Flanagan V. U.S.A, 465 U.S. It is arguable that issues sepepara from guilt or innocence, and appellate review must occure before trial to be fully effective are appellable. Similarly, the right guaranteed by the Constitution and due process is more that the right not to be Convicted for Certain legislative activities or charges: It is the right not to "be questioned" about them - that is not to be tried for them. Helstroki V. Meanori, 492. U.S 500 (1979). Despite the prior notice and motions by the Appellant asserting his Constitutional guaranteed rights and due Process Violations; ROA 24-40839.- 630, 676, 683, 803, 823, 879, 908, 925, 1030, 1120, 1849; the district Court Knowingly and willingly proceeded to the jury trial with no regards to the Constitutional guaranteed rights and due process.

The district Court with the Prior knowledge that the lead Investigator, FBI Agent Jason D. Rennie had Perjury himself, the district Court further allowed him on the Witness Stand for the government

The district Court wrongly Proceed with the Criminal Prosecution despite the Siting Judge Hon. Amos L. Mazzant's Comments after the government rest their Case In-Cheif on the third day of the Jury trial, that the Prosecutor was wrong bringing the Prosecution against the Appellant and no Matter what the Jury decided the Court of Appeals will Overturn the guilty Jury Verdict. See the transcript of the Jury trial held from January 13, 2025 (01|13|2025) to January 16, 2025 (01|16|2025). Properly transcribed for appellate purpose in the Clerk's Office of the United States District Court for the Eastern District of Texas. The Prosecutor had presented no defence on/against the Judge's Comments

The district Court wrongly Proceed to trial Pendency of due process, Fifth Amendment, and Eight Amendment Violation due to the Pretrial Cruel and Unusual Punishment

The Appellant argue in ROA.24-40839.630 that he has Sustained Mental health Issues, PTSD, Panic Attack, as a result of an attack by another Inmate, ROA.24-40839.868. Page ID 1883-1885, due to the government's negligent in Inmate grouping and Categorizing

The Appellant with pre-existing health Conditions, diabetes, Now have to Contend with a life long threatening mental health Issues living on Medications. See attached Mental health Progress notes

Appellant argues that bail reform Act is regulatory in nature, and does not Constitute punishment before trial in Violation of due process. The Appellant was punished and deprived of righ to be free from Cruel and Unusual punishment guarantee under Eight Amendment liberty, or property without a due process of law. ROA.24-40839.630,676. Sentencing in this case will amount to double punishment.

The district Court Wrongly Proceed to the trial resulting in "Misjoinder", "Improper Joinder", "Prejudice Joinder"

The Appellant is a single variance and at the Center of this case. The admission of evidence relating to other Co-conspirators Prejudice the Jury against this Appellant. Consequently, the Appellant Was not able to get a fair trial. See ROA·24-40839.732, see also the Jury trial transcript

The district Court Wrongly Proceed to trial knowing to Support assertion of the innocense, no alternative matches the Potentially powerful exculpatory evidence destroyed by the government during the Search Warrant. ROA·24-40839.797

The district Court Wrongly Proceed to trial, Improperly denied the Appellant's Pretrial release motions. ROA·24-40839.565, ROA·24-40839.620

The district Court Wrongly Proceed to the trial on defects in instituting the Prosecution. ROA·24-40839.851

It has been demonstrated over the last two years that neither the District Court for the Eastern District of Texas nor the Court of Appeals for the Fifth Circuit has provided a single word to contest Appellant's innocence or his judicially noticed alibi defence. It is for this reason that the Appellant raises this, his final claim as a violation of the thirteenth Amendment of the United States Constitution, which states in pertinent part that: "Neither Slavery nor Involuntary Servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

After diligent study, the Appellant is still unable to find any clause excluding the territory of the Fifth Circuit from the mandate of the Thirteenth Amendment.

It is also an identified fact that the Department of Justice receives an 80 billion Dollars annual budget from which each of the 94 Judicial districts compete for their portion. The distribution of funds is determined by convictions in each district.

The district Court Proceed wrongly to the trial with Improper Provision of the Court Interpreter

During the pretrial final hearing on January 8, 2025 (01/08/2025), the Appellant requested for an Interpreter so as the other two (2) Co-defendant's Counsel requested for a Court Interpreter because of the communication barrier that they could not understant when Appellant speak.

During the trial, the Court hired an Interpreter who only Interpret when the Appellant speaks but did not interprete back to the Appellant and only met the demand of the Other Court's Co-defendant's Counsel request for an Interpreter so the Appellant can be heard and understood.

Appellant can not properly object immediately to part of the Counsel's and prosecutor's arguments during the trial due to the communication issues arose out of Lack of Proper Court Interpreter, Prejudice the Appellant.

The government also fail to properly provide an interpreter during the arrest and the Appellant was unable to comprehend or understand the federal agents in part for example when federal agent say "EIDL" the Appellant heard it pronounce "Idol".

The district court wrongly proceed to the trial erred in conducting joint trial and denial of a severance

~~The Appellant is the "key-man"~~ and a single variance in the midst of the conspiracy and the jury can not consider the evidence seperately and independently for each defendant and each charge; and interferences drawn from a defendant's ~~of his righ to~~ exercise of the right to silence can not be ~~avoided, and the statements by the prosecutor including~~ opening and closing arguments was evidental.

The limiting instruction can not prevent the risk of prejudice and actual harm to the Appellant.

The government lump "Bello" together to include the Appellant and several businesses and corporations and presented the Appellant to the jury as Mr. Olamide Olatoya Bello and several other non indicted businesses and corporations, leaving the Appellant nothing but an unfair trial and prejudice which the trial court was unable to afford protection. Mitchell, 484 F.3d at 723

The government refer to the Appellant as PPP/EIDL loan applicant, payee by Co-defendan's related businesses and corporations, assets owner from PPP/EIDL found, but all records and evidences shows

otherwise. The presented bank statements and summary, the Solar panel, the alleged Commercial trucks, the alleged IP address, the alleged wire transfer, the alleged PPP/EIDL loans during the trial and on the P.S.R pointed to unindicted third parties with no violation of the law.

The government presented the Appellant in this Criminal Proceeding as a Criminal Vindictively when the third party Persons with all evidences pointed to did not violate the law. The government alleged the "Control and Manage" person, the Appellant in his fiduciary or official Status, of a crime with no primary violation by the "Controlled and Managed" Person, the related businesses and Corporation. The innocent man, the Appellant, has been Continuously incarcerated for over 22 months and put through the shame of the trial without violation of the law. Said the other way, the Appellant is Convicted for doing the right thing, obey the law and work hard legally for income — W2s/1099s like every other Corporate American and landed in Jail for an alleged Crime not exist or committed.

In 2006, our society marked a significant decline in the number of drug conspiracy cases because it was found to be socially unacceptable to lock up drug users as drug conspirators.

As a significant return of the pendulum, the D.O.J. began project safe childhood later year, to keep bodies in the prison.

The D.O.J. has dedicated significantly increased resources to create child exploitation cases. As a result, the number of federal prosecutions for child exploitation crimes has increased dramatically. While child pornography cases are responsible for a bulk of the increase, the next largest categories are for internet enticers (18 U.S.C. §2422(b)).

It is important to notice that even the members of the united nations declared that the barbaric slave trade, of innocent person, that the court in the united states district for the Eastern District of Texas now practices, is deplorable.

The universal declaration of human rights condemns the actions of the united states district court for the Eastern district of Texas, which has always been defiant to equal right over the last 100 years, and now is in violation of article four of this declaration, which states "No one shall be held in slavery or servitude: slavery and the slave trade shall be prohibited in all

As form

It is important to notice that in the United States District Court for the Eastern District of Texas, an indictment is assumed a Conviction. The government to wit the Counsel assumed the scheduling order to be irrelevant, ROA.24-40839.67 where the district Court issued a scheduling Order, and nothing or record suggested or indicated that either the government or the Counsel complied with the Order, and neither any record suggested that the Court enforce the Order.

As of August 22, 2023 (08/22/2023), the Counsel on record at the time, Mr Frank Jackson notified the Court in his Comment that he had no access to the discovery, that which was practically in violation of the Scheduling Order and that was swept under the Carpet. ROA.24-40839.2226 PageID 1304 (page 32) line 6-9, leaving one to believe assumption of Conviction and guilty upon Indictment with no regard for Innocency in the United States District Court For the Eastern District of Texas. A Convicted Defendant upon indictment have no reason for discovery, and Scheduling Order and its enforcement is assumed irrelevant in the United States District Court for the Eastern District Of Texas.

It is important to notice that 99.8% of the inmates in the United States District Court For the Eastern District of Texas are Locked up for the Crime they did not Commit or are Charged in an Indictment For a Crime not Committed. The long Pre-trial detention tu WIT Ineffectiveness of the Counsel, and the Fair of the government retaliation if pursue trial, Increase Significanty the level of slavery and slave trade in the United States District Court for the Eastern District of Texas, a trade and Slavery Center.

82

It is important to notice that 99.8% of the inmate detained in the United States district Court for the Eastern District of Texas and mostly represented by the CJA are assumed guilty with conviction expectation with no regard for innocency and are coarce, compel, threathen, into guilty plea for conviction with no regards for the Fifth Amendment Constitutional right to Self-Incrimination, Justice and innocency.

Appellant was coarced, compelled, threathen, asked to admit and incriminated himself, into guilty plea for conviction by the counsel on file at the time Mark Lawrence, the Assistant Counsel Philip A. Linder to wit the AUSA team Sean Taylor and an agent from SBA (name unknown) and on several occassions. The Appellant was threathen with the arrest of his wife over the cause of this Criminal proceeding. ROA.24-40839.879 PageID 1893 (page 4), ROA.24-40839.246, ROA.24-40839.868. It has been well known through various CJAs by the inmates detained by the United States District Court for the Eastern District of Texas that the only way out of the prison and/or less prison time is to corporate and innocency/self-incrimination is irrelevant/important even to lie against co-defendants or whatever means legally/illegally necessary for conviction. To corporate in the United States District Court for the Eastern District of Texas is mostly to bridge the Constitutional right as long as the government's conviction rate increases.

It is important to notice that a research shows that the Conviction rate in the United States District Court is over 95% and less than 2% of the defendants that proceed to the trial won, and over 60% success rate on appeal. Leaving one to believe that the guilty and Conviction rate assumption upon indictment is over 98% in the United States District Court for the Eastern District of Texas and the Motive behind the obsessive Conviction assumably and predictively link to the driven force behind the ~~$36~~ $3,360,000.00 shown on the budget allocation reports that the Congress will pay to the Judicial district for each Conviction. Considering the word of Judge Henry Friendly about habeas Corpus, "is Innocence irrelevant?" Seem the United States District Court for the Eastern District of Texas answers that question here.

84

It is important to notice that inmates at Fannin County Jail in Sherman Texas cannot make a phone call to the district court on 9038922921 directly from the jail because the direct phone call access to the court is blocked by the facility telephone system provided by Securus Technology. The Appellant has experience several missing mails to/from the court because the inmate mails was improperly serve. The facility do not have provision for legal aid, there is only a kiosk in a small room about 1 1/2 feet width and 1 1/2 feet long with no legal books strictly good for one inmate at a time to type their legal work. The Appellant had experience excessive delay in printing request in a facility that house arround 600 inmates only "Mrs. Johnson" run the scheduling to acces the "typing room", Barber shop, Photo copy e.t.c leaving several inmates legal needs can be not meet. Getting a photocopy or access to typing room or to print could take a week or longer. The Appellant expressed this concern to Hon Judge Amos L. Mazzant III during the pretrial hearing on December 19, 2024 but the response was that the court has no control over the jail. See the transcript of the pretrial hearing held on December 19, 2024 (12/19/2024) before the Hon. Judge Amos L. Mazzant III, properly transcribed for appellate purposes in the United States District Court for the Eastern District of Texas.

85

It is important to notice that the Appellant was
presented or provided a copy of the Discovery on
Compact CD/DVD and USB drive and the facility seized
the Disk and USB drive from the Appellant and claimed
that the facility did not have the resources for the
Appellant to view the discovery on the Compact Disk
and USB Jump Drive.

It is important to notice that the Counsel on file as
the Assistant Provided the facility a copy of the printed
discovery prior to trial with the instruction not to
allow the Appellant access the discovery in his Cell
knowing that the Appellant had limited access or
no access to the "typing room" or special room to
view the discovery.

Combination of all these factors and restrictions leaving one
to believe that the assumption of guilty is the driving
force behind the factors and limitations that deprive the
Appellant access to resources to make out his own
defense and denial of access-to-court.

It is important to notice that defendant Antonio Hernandez in Criminal Case Number 4:23CR007(9) has been contenueously incarcerated for over twenty six months and without a trial

It is important to notice that defendant Edy Servando Arroyo Montejo in Criminal Case Number 4:20CR174(1) was contenueously detained for over thirty six months before Plea Offer and without a trial

It is clear to see that the Thirteenth Amendment has been circumvented to abolish only the private ownership of slaves. The act of kidnapping the innocent for the slave trade is obviously flourishing in the Eastern District of Texas.

It is the mandate of the Fifth Circuit Court of Appeals that requires District Courts to resolve all claims for relief raised in criminal proceedings, regardless of whether relief is granted or denied. See Clisby v. Jones, 960 F. 2d 925, 936 (11th Cir. 1992) (en banc); see also Rhode v. United States, 583 F. 3d 1289, 1291 (11th Cir. 2009) (applying Clisby to §2255 Motion to Vacate). A claim for relief is any allegation of a constitutional violation.

Clisby, 960 F. 2d at 936. Two claims may be distinct even if both allegations arise from the same alleged set of operative facts. Id. When a District Court fails to redress all of the claims, we "will vacate the District Court's judgement without prejudice and remand the case for consideration of all remaining claims..." Id at 938.

The violation of the right to be informed of the nature and cause of the accusation, ineffectiveness of the counsel in providing the required assistance, constitutes a violation of a defendant's Sixth Amendment right, and thus is a claim of a constitutional violation. Strickland v. Washington, 446 U.S. 668, 684-86, 104 S. Ct. 2052, 2063-64, 80 L. Ed 2d 674 (1984)

88

## CONCLUSION

WHEREFORE, based on the forgoing facts, arguments, and authorities, Mr. Olamide Olateyo Bello respectfully requests that this honorable Court vacate the conviction/sentencing, remanded the case for the entry of judgements of acquittal and for an immediate release from the custody, alternatively, for an order compelling the district court to vacate the conviction/sentencing and remand the case for the entry of judgements of acquittal and for an immediate release from the custody, and for all other relief that the law and justice may allow

Respectfully submitted on this 9 day of July 2025

Mr. Olamide Olateyo Bello



89

## CERTIFICATE OF SERVICE

I hereby Certify that I have served a copy of the foregoing Petition on the Clerk of Court via U.S. mail, properly addressed, and affixed thereto. Mr. Olamide Olateyo Bello respectfully requests that a copy be served on all parties to this processing via CM/ECF System.

Respectfully submitted on the 9 day of July 2025

## VERIFICATION

I declare under penalty of perjury as authorized by U.S.C § 1746 that the factual allegations and factual statements contained in this document are true and correct to the best of my knowledge

Respectfully submitted on the 9 day of July 2025



91.0

## Record On Brief

This Brief is based on this document, On the Portions Of the Designation of record on Appeal on file, on the Part of transcript Of the Jury trial on the Criminal Case 4:23CR136(1) held on January 13, 2025 (01|13|2025) through January 16, 2025 (01|16|2025), On the Part of transcript of the Pretrial hearings held on December 19, 2025 (12|19|2025) and final Pretrial Conference hearing held On January 8, 2025 (01|08|2025), and to be On file, filed as Soon as available as part of the District Court Made it Designation Of record on Appeal, and on the attached Certificate of service

Date: 7/9/2025

Respectfully Submitted,

Mr. Olamide Olatayo Bello



7/9/25